IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25-cv-00306-SCR-WCM

| | | |
|---|---|---|
| ANGELINA ROSE EKIS,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | ) | MEMORANDUM AND RECOMMENDATION |

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

## I. Procedural Background

In 2021, Angelina Rose Ekis ("Plaintiff") filed applications for disability insurance benefits and supplemental security income. Transcript of the Administrative Record ("AR") 511-512; 513-522. Plaintiff alleges disability beginning October 7, 2014. AR 511; 513.

On February 11, 2025, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 14-44. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of obesity, spine disorders, bipolar disorder, borderline personality disorder, substance abuse disorder, attention deficit disorder, anxiety disorder, schizophrenia, and posttraumatic stress disorder. AR 20. After determining that Plaintiff's impairment did not meet or medically equal any of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform medium work… except she can understand and follow simple instructions and directions; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with all others to the extent necessary to carry out simple tasks; handle simple, repetitive work related stress; and make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that do not require her to supervise or manage the work of others. She is limited to occasional interaction with the public, coworkers, and supervisors.
>
> AR 22.

Applying this RFC, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled. AR 34-35.

## III. Plaintiff's Allegation of Error

Plaintiff contends that the ALJ failed to consider the limiting effects of her mental impairments appropriately.

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505(a); 416.905(a). The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh

conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].” Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner’s decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Discussion

When evaluating a claimant's symptoms, an ALJ must use the two-step framework set forth in 20 C.F.R. §§ 404.1529 and/or 416.929 and SSR 16-3p, 2016 WL 1119029 (March 16, 2016).

First, the ALJ must determine whether objective medical evidence presents a “medically determinable impairment” that could reasonably be expected to produce the claimant's alleged symptoms. See 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.

Second, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. The Fourth Circuit has consistently recognized that “[a]t this step, objective evidence is not required to find the claimant disabled.” Arakas v. Commissioner, Social Security Administration, 983 F.3d 83, 95 (4th Cir. 2020).

Here, the ALJ acknowledged Plaintiff's testimony that she has difficulty getting along with people, is paranoid, gets confused and experiences auditory and visual hallucinations, wonders if people are spying on her, has panic attacks, bad dreams and flashbacks, is irritable, and feels sleepy and dizzy due to her medications. AR 23. The ALJ also acknowledged Plaintiff's mother's report regarding similar symptoms. AR 24-25.

The ALJ then found that Plaintiff's statements concerning "the intensity, persistence and limiting effects of [her alleged] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record…." AR 25.

To support that conclusion, the ALJ engaged in a detailed discussion of Plaintiff's mental health records. AR 27-32.

Significantly, the ALJ discussed records reflecting Plaintiff's paranoia, hallucinations, and delusions. <u>See</u> AR 27 (referencing Plaintiff's claim of hearing angry voices); 28 (citing January 2019 records in which Plaintiff reported someone had placed an electronic device inside her that was continuously shocking her and that she had been hearing voices outside of her window (AR 1786)); AR 28 (discussing April 2019 record indicating that Plaintiff spoke in a British or Middle Eastern accent, continued to report being assaulted in her sleep, and believed people were stealing from her (AR 1888)),

AR 30 (discussing April 2022 record in which Plaintiff again told clinicians that a chip had been placed inside her and that she heard voices (AR 3985)).

The ALJ also, though, discussed records indicating that Plaintiff exhibited normal memory, attention, and concentration, as well as a linear thought process and normal speech and was able to interact with others. See e.g., AR 27 (citing January 2016 record reflecting restricted affect with normal memory, attention, and concentration as well as linear and goal directed thought process (AR 1455-1461)); AR 29 (citing unremarkable mental status exams in August, October, and December of 2019).

Additionally, the ALJ noted multiple records that reflected Plaintiff's improvement when she was compliant with treatment. See e.g., AR 29 (referencing Plaintiff's reports that her medication was working well (AR 3469 (October 2020); AR 3481 (April 2021)); AR 31 (noting a mental heath provider's statement that once Plaintiff was placed on Latuda, Plaintiff found near resolution of anxiety and psychotic symptoms (AR 4224)).[1]

---

[1] Plaintiff contends that the ALJ failed to consider her ability to comply with treatment in light of her mental health symptoms. Doc. 6 at 16 (citing *inter alia*, Garrison v. Colvin, 759 F.3d 995, 1018, n. 24 (9th Cir. 2014) ("…we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions."). It appears, though, that the ALJ did not deny Plaintiff benefits solely based on her treatment compliance (or lack thereof).

Further, the ALJ considered group therapy records reflecting that Plaintiff presented as alert and oriented and was able to appropriately interact with others, AR 32 (citing AR 4292; AR 4309)) and noted instances in which Plaintiff's providers questioned her schizophrenia diagnosis and where Plaintiff's presentation appeared to be inconsistent. See AR 27 (referencing treatment record in which provider stated that the diagnosis of schizophrenia was "questionable" and there was "limited evidence" to support the condition, and noting that "schizophrenia was added to [Plaintiff's] problem list at [Plaintiff's] request because 'it will help me get what I want'"); AR 32 (discussing records reflecting that Plaintiff "presented quite differently" in group therapy sessions as compared to individual counseling sessions with Caitlyn Tugman, PAC).

After reviewing Plaintiff's mental health records, the ALJ explained as follows:

> While the claimant may have some episodes of hallucinations, she reports them differently to different providers, including whether they are "good" or "bad," "command" or not, spirits or real people, and constant or rare. While this could be a symptom of her disease, several providers have questioned whether the claimant actually has psychotic symptoms. And in treatment with multiple providers during overlapping or closely adjacent periods, the claimant simultaneously reports very severe symptoms to one provider and few symptoms to another. The claimant has also been able to work, go to school, visit with family in another state, make friends, read, exercise,

> and otherwise engage in activities that she sometimes reports are impossible. The record is clear, as well, that adherence to medication mitigates the claimant's symptoms. And finally, the claimant's mental status examinations also show she can interact appropriately, appropriately manage her grooming and hygiene, and think clearly, logically, and linearly without distraction from internal stimuli. The claimant also has repeatedly demonstrated intact memory, attention, and concentration, with few exceptions. And Ms. Tugman has reported the claimant's psychotic symptoms nearly resolved with Latuda. In February 2024, when the claimant told Ms. Tugman she was exercising at Planet Fitness 3 times per week and had no recent psychotic symptoms, she also testified under oath that she was hearing voices and had trouble interacting with other people. But, like her treatment notes, her testimony regarding symptoms was often vague. She could not really describe her specific difficulties in getting along with others, said she was not really sure what she did to get fired from some jobs, and said she gets confused when doing activities. But she also said she does shop in the grocery store, and she takes care of herself pretty regularly and does "ok" with daily tasks like laundry, cooking, and cleaning except for limitations from back pain. She testified she had recently taken trips to Portland, Oregon and Carolina Beach. The claimant also testified she had finished her degree in June 2023, but she could not swear to that. Her degree was in Health Sciences and the last two years were done through distance learning. Treatment records show that the claimant was thinking of attending a grad program to be a teacher.
>
> AR 32-33.

"[T]he substantial evidence standard 'presupposes ... a zone of choice within which the decisionmakers can go either way, without interference by

the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" Dunn v. Colvin, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988)).

At the same time, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869-70 (4th Cir. 2017) (remand appropriate because the same medical records that contained the "normal" findings relied upon by the ALJ also included notations that plaintiff presented with constant pain and was given a steroid injection); see also Arakas v. Comm'r, Social Security Admin., 983 F.3d 83, 99 (4th Cir. 2020) (vacating ALJ's decision where ALJ cherry picked certain facts and misstated and mischaracterized other material facts). In sum, when weighing the evidence, an ALJ cannot ignore material information that is contrary to his or her decision.

It is clear from the record that Plaintiff has suffered from significant mental health challenges, and the undersigned acknowledges the difficulties Plaintiff has endured. But, as discussed above, the Court's role is not to reweigh the evidence and here, the ALJ fulsomely discussed treatment records reflecting both Plaintiff's struggles and her improvements, such that the undersigned cannot say that the ALJ ignored significant portions of the

administrative record or improperly cherry picked records to support his ultimate conclusions. See O'Neill v. Berryhill, No. 5:16-CV-129-DCK, 2017 WL 2469243, at *7 (W.D.N.C. June 7, 2017), aff'd, 723 F. App'x 240 (4th Cir. 2018) ("The undersigned is satisfied that substantial evidence supports the ALJ decision, even if Plaintiff (or the Court) might have reached a different result."); Evans v. Colvin, No. 5:14-CV-00392-FL, 2015 WL 5331828, at *6 (E.D.N.C. June 24, 2015), report and recommendation adopted, No. 5:14-CV-00392-FL, 2015 WL 5332766 (E.D.N.C. Sept. 14, 2015) ("It is not within the province of the undersigned to re-weigh the evidence, even if the undersigned might reach a different result, where the ALJ has considered and analyzed all the relevant evidence and his decision is supported by substantial evidence, as is the case here."); Dowell v. Bisignano, Commissioner of Social Security, No. 1:24-CV-00123-KDB-DCK, 2025 WL 2083197, at *4 (W.D.N.C. July 24, 2025) (affirming the Commissioner's denial of benefits where, although the ALJ referenced "normal and unremarkable" mental status exams in her summary of the record, the ALJ "devoted significant attention to evaluating and reconciling the discrepancies between Mr. Dowell's reported symptoms, his daily activities, and his own reports of symptom improvement with treatment"); Mary W. v. O'Malley, No. 1:23CV128, 2024 WL 1256268, at *11 (M.D.N.C. Mar. 25, 2024) (finding that the ALJ did not improperly rely entirely on the absence of objective medical evidence to discount plaintiff's symptoms

of depression where the ALJ found plaintiff's symptoms lacked consistency with "the medical evidence and other evidence in the record" which included plaintiff's unremarkable or normal findings on mental status exams, plaintiff's numerous social activities and ability to serve as the primary caregiver to her autistic son, and her reports of significant symptom improvement with therapy and medications); Cf., Testamark v. Berryhill, 736 F. App'x 395, 398–99 (4th Cir. 2018) ("Because symptoms of mental illness may wax and wane over the course of treatment, the fact that Testamark exhibited fair judgment or appeared cooperative on certain specific occasions is not inconsistent with the conclusion that she is unable to work.").[2]

## VI. Recommendation

The undersigned therefore **RESPECTFULLY RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

Signed: August 28, 2026

W. Carleton Metcalf
United States Magistrate Judge

[2] Plaintiff also appears to take issue with the ALJ's reference to earlier state agency consultants' opinions regarding Plaintiff's mental residual functional capacity. Doc. 6 at 12. While it does appear that the ALJ cited earlier opinions, the substance of the opinions referenced and relied upon by the ALJ is consistent with the opinions issued by the state agency consultants in 2022 and 2024. See AR 164, 191.

## <u>Time for Objections</u>

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).